Daniel S. Sharp – SBN 220996
1611 Telegraph Ave, Suite 1030
Oakland, CA 94612
Tel: (510) 451-2010
Fax: (510) 451-2011
dss@danielsharplaw.com

E-filing

**FILED**

MAR 31 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Attorney for Plaintiff JNANA BRIGHT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JNANA BRIGHT,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, GEORGE GASCON, BUDDY SIGUIDO and DOES 1 to 20, inclusive,<br><br>　　　　Defendants. | CASE NO.: CV 11 1586 EMC<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jnana Bright sues the City and County of San Francisco, George Gascon, Buddy Siguido, and Does 1 to 20, inclusive, ("Defendants"), and each of them, demands a trial by jury of all issues, and for causes of action alleges:

## JURISDICTION

1. This action arises under 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343.

## VENUE AND INTRADISTRICT ASSIGNMENT

2. The claims alleged herein arose in the City of San Francisco, State of California. Accordingly, venue and assignment is proper in the United States District Court for the Northern District of California, San Francisco division pursuant to 28 U.S.C. § 1391(b) and Local Rule 3-2(d).

*Bright v. City and County of San Francisco, et al. - Complaint for Damages*

1

## PARTIES

3. Plaintiff Jnana Bright is an adult over the age of 18 and at all times mentioned herein was, and still is, a resident of the City and County of San Francisco, State of California.

4. Defendant City and County of San Francisco is, and at all relevant times mentioned herein was, a municipal corporation duly organized and existing under the laws of the State of California.

5. Defendant George Gascon at all relevant times mentioned herein was, and at the time of the incident upon which this complaint is based, the Chief of Police for the City and County of San Francisco. Defendant Gascon is sued in his individual and official capacities. Upon information and belief, Defendant Gascon was the policy-maker for Defendant City of San Francisco on the matters alleged herein related to the customs, policies, practices, of the City of San Francisco Police Department, including, but not limited to, customs, policies and practices related to the training, supervision, hiring and discipline of police officers and with respect to the management and supervision of the City and County of San Francisco Police Department.

6. Defendant Buddy Siguido (herein after "Siguido") is, and at all relevant times mentioned herein was, a police officer with the City and County of San Francisco Police Department. Defendant Siguido is sued in his individual and official capacities.

7. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein under the fictitious names DOE ONE through DOE TWENTY, inclusive. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes that each of the DOE defendants is responsible in some manner for the occurrences and injuries alleged in this complaint. At all times mentioned in the causes of action to which this paragraph is incorporated by reference, each and every Defendant was the agent or employee of each and every other Defendant. In doing the things alleged in the causes of action into which this paragraph is incorporated by reference, each and every Defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission, and authorization of each of the remaining Defendants. All actions of each of the Defendants alleged in the causes of action into which this paragraph is

incorporated by reference were ratified and approved by the officers or managing agents of every other Defendant.

## STATEMENT OF FACTS

8. On July 18, 2010, Plaintiff was pushing her newborn son, Paris Conley, in a stroller near the intersection of 25th Ave and Kirkham Street in San Francisco, CA.

9. Plaintiff had previously been at the nearby residence of Estella Conley, grandmother to Paris Conley. At some point before or just after Plaintiff left her residence, Ms. Conley contacted the police to report that Plaintiff had allegedly "grabbed" her.

10. Two male officers, Defendant Siguido and his partner Officer Chu (herein after "Chu"), from the San Francisco Police Department ("SFPD") approached Plaintiff, apparently in response to Ms. Conley's allegations. Plaintiff spoke with the officers for several minutes, making no attempt to leave.

11. After initially approaching Plaintiff, personnel from the San Francisco Fire Department (herein after "SFFD") were summoned to examine Plaintiff. During this examination, Plaintiff was not handcuffed. She did not attempt to leave the area while the officers spoke with her and made no threatening moves or gestures. No efforts were made to find someone to take custody of or care for Paris Conley, should Plaintiff be placed under arrest.

12. After the SFFD personnel left, Chu and Siguido then placed Plaintiff under arrest, handcuffing her arms behind her while she was on her knees, facing Paris in his stroller. Plaintiff was then lifted off the ground, and the officers moved her towards their patrol car (car #1262) parked on 25th Ave. Plaintiff's three month old son Paris was still in his stroller just next to her. Plaintiff began to protest as the officers moved her toward the patrol car and away from Paris, because the officers were placing her under arrest, but had not made any arrangements to find someone to take custody of her child.

13. The officers moved Plaintiff between two vehicles parked on the street but were unable to place Plaintiff inside their patrol car because of the position in which the vehicle had initially been parked. Officer Siguido (#4212) pushed Plaintiff's torso over the rear of a nearby pick-up truck while Officer Chu (#4200) moved the SFPD patrol car forward. At this time, Plaintiff expressed her fear and anger to Chu and Siguido that her infant son Paris would be left alone on the street if she were taken away.

14. After the patrol car was moved forward, both officers began shoving Plaintiff into the patrol car. Plaintiff yelled, "You've got my baby in the street!" Officer Chu then walked around to the other side of the vehicle, in an effort to pull Plaintiff into the car by her feet, while Defendant Siguido continued to grasp and push Plaintiff into the patrol car by the back of her neck.

15. Rather than waiting for Chu to reach the other side of the patrol car and seize Plaintiff's feet, Defendant Siguido adjusted his grip on Plaintiff's neck, placing both hands around her neck and then pivoted quickly to his left, intentionally throwing Plaintiff headfirst onto an asphalt surface, all while her hands were restrained behind her back. Plaintiff was rendered unconscious from the force of Defendant Siguido's throw.

16. Defendant Siguido exercised an excessive and unnecessary amount of force against Plaintiff, audibly grunting as he threw her face first to the pavement. The sound of his grunting, as well as Plaintiff's contact with the asphalt, could be heard from three floors above the street through a closed window, where the entire incident was recorded by witness Leslie Ho.

17. After throwing Plaintiff face down, Defendant Siguido stepped over her limp body, lifted her head by her hair with his left hand, and then dropped her head face first back onto the pavement.

18. Plaintiff was unconscious and motionless for approximately twelve minutes following the incident, after which she could be heard groaning audibly. During this time, additional SFPD officers arrived at the location of the incident, while Plaintiff lay unconscious and face first on the ground between two parked cars. Approximately eighteen minutes after being thrown to the ground, and while still handcuffed, Plaintiff was able to sit upright on the ground. Approximately six SFPD officers stood around her as she sat, bleeding visibly from the head. At around the same time, SFFD personnel arrived at the scene for the second time. Plaintiff begged the SFPD and SFFD personnel near her to "please call my husband", referring to Paris Conley's father, David Conley.

19. Plaintiff was eventually transported to San Francisco General Hospital where she has continued to receive treatment for injuries to her head, neck, left shoulder and arm, as well as suffering from headaches, dizziness, ringing in her ears, and blurred vision. She continues to take prescription medications for her on-going symptoms and pain, in addition to on-going medical treatment and

participation in physical therapy. There is a possibility that Plaintiff sustained permanent injury and will need future medical treatment and as a result of Defendant Siguido's excessive use of force.

20. The abuses in question were the product of a culture of tolerance within the San Francisco Police Department. This culture is rooted in the deliberate indifference of high ranking City and County officials, including, but not limited to Defendant Gascon and/or other high ranking San Francisco Police Department officials and/or supervisors, individually and/or acting in concert with one another, who have routinely acquiesced in the misconduct and otherwise failed to take necessary measures to prevent and curtail such misconduct.

21. The incidents described herein were caused by the deliberate indifference of the City and County of San Francisco, Defendant Gascon, and/or other high ranking Police Department officials and/or supervisors, with regard to the need for more or different training and/or supervision and/or discipline of its police officers, including, but not limited to, Defendant Siguido as well as unknown officers involved in the above described incident.

22. The incidents described herein were caused Defendant City and County of San Francisco and Defendant Gascon's customs, policies and/or practices of failing to ensure that officers were encouraged by their training officers, in the academy and elsewhere, to engage in acts of misconduct against citizens and to falsify reports and evidence.

23. The incidents described herein were caused by Defendant City and County of San Francisco and Defendant Gascon failing to fully and/or fairly investigate alleged misconduct by its police officers.

24. The incidents described herein were caused by the City and County of San Francisco and Defendant Gascon failing to appropriately monitor or otherwise track complaints of misconduct against its police officers so that appropriate and timely disciplinary action and/or training could be taken when officers were shown to have a history of complaints.

25. The incidents described herein were caused by the City and County of San Francisco and Defendant Gascon failing to promptly remove or terminate officers who repeatedly violated the rights of citizens and/or engaged in the type of misconduct alleged herein.

26. The incidents described herein were caused by Defendant City and County of San Francisco and

Defendant Gascon's customs, policies or practices which encouraged, authorized or condoned false arrests, fabrication of evidence, falsification of police reports and/or other misconduct which foreseeably would result in the violation of the rights of citizens.

27. As a result of Defendant City and County of San Francisco and Defendant Gascon's policy of indifference, a custom or practice developed within the San Francisco Police Department whereby it was accepted practice for police officers to abide by a "Code of Silence." Under this Code, police officers charged with upholding the law routinely ignored or otherwise failed to report or take action against fellow police officers who engaged in misconduct, including, but not limited to, Officer Siguido as well as unknown officers involved in the above described incident.

28. Defendant Gascon, tacitly or directly ratified, approved, condoned and/or otherwise encouraged a pattern, practice, custom or policy of misconduct and/or civil rights violations by his subordinates, such as occurred in the instant case.

29. Prior to the subject incident, Defendant City and County of San Francisco and Defendant Gascon and/or other high ranking members of the San Francisco Police Department were on actual notice of problems with the accountability of San Francisco Police Officers, including, but not limited to, problems with the ability of the Internal Affairs Bureau of the San Francisco Police Department to fully, fairly, and objectively investigate citizens' complaints concerning misconduct of members of the San Francisco Police Department.

30. As a result of customs, policies, practices and/or the lack thereof, Defendant City and County of San Francisco, Defendant Gascon and/or high ranking supervisors of the San Francisco Police Department have encouraged, authorized, ratified, condoned and/or have failed to remedy continuing acts of misconduct and civil rights violations, including, but not limited to, those which have resulted in the damage as alleged herein to Plaintiff.

## COMPLIANCE WITH CALIFORNIA GOVERNMENT TORT CLAIMS ACT

31. Prior to commencing this litigation, Plaintiff presented a timely Tort Claim to the City and County of San Francisco pursuant to the California Tort Claims Act. Said claim was rejected by the City and County of San Francisco.

*Bright v. City and County of San Francisco, et al. - Complaint for Damages*

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

(Violation of 42 U.S.C. § 1983 against all Defendants)

32. Plaintiff re-alleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as though set forth herein.

33. In doing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff of certain constitutionally protected rights, including, but not limited to: (a) the right not to be deprived of liberty without Due Process of Law; (b) the right to be free from unreasonable search or seizure; and/or (c) the right to equal protection of the law.

34. It was clear under the law, at the time of the detainment of Plaintiff's person, that the use of force under said circumstances was unreasonable and unconstitutional.

35. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

36. Plaintiff has incurred and will continue to incur attorney's fees and costs as a result of prosecuting this cause of action.

37. As a direct and proximate result of said acts and omissions, Plaintiff has suffered actual damages in an amount according to proof.

### SECOND CLAIM FOR RELIEF

(Negligence against all Defendants)

38. Plaintiff re-alleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as though set forth herein.

39. Defendants Gascon and Siguido, while acting within the course and scope of their employment for Defendant City and County of San Francisco, and individually, owed Plaintiff the duty to exercise reasonable care at or about the times of the aforementioned incidents.

40. Defendants Gascon and Siguido by their conduct alleged herein, negligently, carelessly, and wrongfully breached their duty to use reasonable care owed to Plaintiff.

41. Defendant City and County of San Francisco is therefore liable as respondeat superior and/or

1 vicariously for the negligence of its employees and agents within the course and scope of their
2 employment and agency as alleged herein.
3 42. Plaintiff has incurred and will continue to incur attorney's fees and costs as a result of
4 prosecuting this cause of action.
5 43. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages and
6 injuries as alleged herein.

## THIRD CLAIM FOR RELIEF

(Battery against Defendants City and County of San Francisco, Gascon and Siguido)

44. Plaintiff re-alleges and incorporates by reference all of the allegations set forth in the preceding paragraphs as though set forth herein.

45. In doing the acts alleged in this Complaint, Defendants caused Plaintiff to be subjected to non-consensual, non-privileged, offensive touching of Plaintiff's body, constituting battery.

46. As a result of said battery, Plaintiff suffered the damages and injuries alleged in this Complaint.

47. Said battery was caused by Defendants within the course and scope of their employment with Defendant City of San Francisco and/or individually.

48. Plaintiff has incurred and will continue to incur attorney's fees and costs as a result of prosecuting this cause of action.

49. Defendant City and County of San Francisco is therefore liable for said battery as respondeat superior and/or vicariously.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a. General damages in amounts to be determined according to proof;

b. Special damages, including but not limited to, medical costs;

c. Statutory damages;

d. Attorneys' fees pursuant to statute;

e. Costs of suit;

f. Punitive and exemplary damages in amounts to be determined according to proof as to the

*Bright v. City and County of San Francisco, et al. - Complaint for Damages*

1  individual defendants;

2  g. For pre and post judgment interest as permitted by law;

3  h. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff Jnana Bright hereby demands a jury trial of all issues triable as of right by jury.

Dated: 3/28/11    By: _____
Daniel S. Sharp
Attorney for Plaintiff
JNANA BRIGHT

*Bright v. City and County of San Francisco, et al. - Complaint for Damages*